**Nathan W. Odle, Appellant, v. Hoopeston Canning Company, Appellee.**

**Gen. No. 8,736.**

Opinion filed April 11, 1933.

CHARLES TROUP, for appellant.

DYER & DYER, for appellee.

MR. PRESIDING JUSTICE ELDREDGE delivered the opinion of the court.

The declaration in this case consists of an amended original count and an additional count. A demurrer was sustained to both counts and appellant electing to stand by the declaration, judgment was given in favor of appellee in bar of the action.

The amended original declaration is substantially as follows: "For that whereas, etc., on, to-wit, March 10th, A. D. 1931, the defendant was operating a canning factory in Hoopeston, in Vermilion County, Illinois, for the canning of sweet corn, and had so been operating said factory for to-wit, five years theretofore and operated it after said date, up to, to-wit, the present time;

"that plaintiff on, March 10th, 1931, and since said date, was operating a farm in Vermilion County, which included, with other real estate, 45 acres of land hereinafter referred to;

"that on said date and in years prior thereto, it was and had been the custom of the defendant, for the purpose of procuring sweet corn to be canned by it, to ascertain by letter or otherwise from persons operating farms in the vicinity of Hoopeston (including the

vicinity where plaintiff's land was located), how many acres of land persons desired to and could plant to sweet corn for the ensuing year and to submit to such persons the prices per ton which it would pay for said corn, to the end that such persons would plant and cultivate and raise certain acres of sweet corn which could and would be delivered to defendant's factory at such prices when ready for canning, and to this end on, to-wit, March 10th, 1931, the defendant sent two letters to the plaintiff which were received by the plaintiff, true and correct copies of which are as follows:

" 'March 10, 1931.

" 'Dear Sir:

" 'Our prices on sweet corn in good canning condition delivered to the factory in 1931 will be

" 'Country Gentleman Corn     $11.50 per ton
" 'Golden Bantam Corn        14.00 per ton.

" 'If you need assistance gathering your sweet corn we agree to gather 50% of same at whatever wages we have to pay our men, plus 2¢ per cwt. where the acreage is not to exceed four miles distance from our plant, and 4¢ per cwt. over this base price for any acreage beyond four miles from our plant. Where the distance does not exceed four miles and the corn is one-half mile or more from the paved roads, you are expected to haul extra loads, jerked by our men to the factory whenever requested to do so, without cost to us.

" 'Where the distance exceeds four miles you are expected to haul the loads to the paved roads or to the factory when asked by us to do so, without cost to us. Also in case of extreme wet weather, you will agree to help furnish jerking teams in the fields when asked to do so, without cost to us.

" 'When the crop is poor, due to working the ground wet, failing to get same in condition before planting, or lack of proper cultivation, we reserve the right not to help you on the delivery of said corn.

" 'In case of emergencies, due to scarcity of men, extremely hot or rainy weather, or unforeseen accident, you are expected to help jerk and deliver corn to the factory.

" 'Growers of sweet corn will be entitled to one ton, either husks or cobs, per acre of sweet corn grown, free, for their individual use. Those who do not use their full allowance of cobs or husks will not be allowed to dispose of them to other parties.

" 'Very truly yours,

" '(Signed) Hoopeston Canning Co.

" 'March 10, 1931.

" 'Dear Sir:

" 'Before deciding on naming a price for our sweet corn this year, we ascertained what canners in other states are paying and found these prices to run from $8.00 to $12.00 per ton, with the average about $11.00.

" 'The factories located in the immediate vicinity are practically the only ones in the U. S. who give any assistance in delivering the corn. Nearly all the other canners require the grower to jerk and haul all his corn to the factory. This hauling that we do for our growers costs us $1.50 per ton more than we are charging them, which makes the corn cost us $13.00 per ton for Country Gentleman and $15.50 per ton Golden Bantam, which is considerably more than other canners are paying, as they do not have this hauling charge. Furthermore, a great many canners charge their growers with the seed he plants, thus further reducing the grower's net return. We do not charge for the seed.

" 'We have to sell our canned corn in competition with these canners whose green corn costs them less than ours, and the only way we can continue in business is by reducing our costs in every way possible.

" 'We are now ready to book part of our acreage and will be pleased to hear from you. Old growers will be given preference when they have ground that we consider suitable for raising sweet corn. Acreage

offered after we have filled our present requirements will be listed and may be accepted later if conditions warrant it. We do not anticipate making our full acreage contracts until the latter part of April.

" 'Will you please fill out and mail or bring the enclosed form to us? If you desire to plant more than one field fill out a similar form for each field.

" 'Very truly yours,
" '(Signed) Hoopeston Canning Co.'

"That the form referred to in the letter last above set forth was enclosed therewith;

"That upon the receipt by plaintiff of the defendant's letters and the form enclosed therewith, or shortly thereafter, the form enclosed was filled out to the effect that plaintiff would plant and attend 45 acres of his land in sweet corn pursuant to the letter above referred to and signed by plaintiff and mailed to defendant; that thereby plaintiff then and there agreed with defendant, subject to the conditions contained in said letters, that the plaintiff would plant and tend to 'Country Gentleman' sweet corn for the year 1931, said 45 acres of land so operated by plaintiff, and in consideration thereof, defendant, subject to the conditions in said letters, agreed to buy of the plaintiff at $11.50 per ton, the sweet corn raised on said 45 acres of land; that defendant retained said form so signed by plaintiff and gave no copy thereof to the plaintiff and plaintiff has not now, and never has had, a copy of said form, but the defendant has always retained the same;

"that plaintiff's 45 acres of land had previously been used by him as a pasture and feeding ground for feeding cattle and hogs and had otherwise been fertilized and was in a high state of fertility and productivity and had been plowed in the fall and winter of 1930, all of which plaintiff had previously told to defendant; that had said 45 acres of land been put in and tended to sweet corn for the year 1931, the same would

have produced, to-wit, three and one-half tons per acre of sweet corn;

"that after making said contract with the defendant, he arranged his affairs to plant said 45 acres of land in 'Country Gentleman' sweet corn and also arranged for the crops and cultivation for the rest of his farm consisting of to-wit, 160 additional acres of land, and did not make or attempt to make, any arrangement, with another company operating a canning factory for the canning of sweet corn, then and theretofore and since operating at Hoopeston, Illinois, for the raising of sweet corn on said 45 acres of land for said other company which he would have done had it not been for the fact that he relied upon the contract so made by him and the defendant being carried out by the defendant;

"that on to-wit, the 1st day of May, A. D. 1931, and while said contract between him and the defendant was in full force and effect and when the plaintiff had done nothing toward rescinding or breaching the same, and was ready, able, willing and anxious to carry out the same, defendant without any reasonable cause whatsoever canceled said contract and notified the plaintiff that it would not carry out and perform the terms of the same;

"that he thereupon attempted to make a contract with the other canning company at Hoopeston, Illinois, for the raising of sweet corn on said 45 acres of land, for it, but could not do so because it had already filled its requirements in that respect, and thereupon plaintiff was compelled to and did put said 45 acres of land in other crops for the year 1931, as follows: he planted 28 acres of said land in field or Indian corn; and 11 acres of said land in soy beans and 6 acres of said land in Soudan grass;

"that by reason of being prevented from putting said 45 acres of land in sweet corn (which he would have done had the defendant not wrongfully canceled

its contract with him as aforesaid) and having to put
the same in other crops as aforesaid, the plaintiff was
greatly damaged and sustained damages, being the
difference between the net value of the crops as actu-
ally put in by him on said 45 acres of land and the
gains he would have derived had he not been prevented
from planting sweet corn on said land, in the amount
of, to-wit, $1,050.25; and also sustained other damages
in this: that had the defendant not canceled its con-
tract with him he would, under his contract with the
defendant, have received 45 tons of husks and cobs
suitable for feeding to live stock, which were at the
time he would have received the same, if defendant had
carried out its contract with him, of the fair cash mar-
ket value of, to-wit, $3.50 per ton, making a loss to the
plaintiff of $157.50 by reason of not receiving said
husks and cobs; and also if sweet corn had been planted
on said 45 acres of land, the value of the early stock
pasture of the cornstalks left remaining after the sweet
corn was jerked, would' have been to-wit, $2.00 per
acre, or $90.00 and also under said contract entered
into between plaintiff and defendant, the defendant
was to and would have furnished the sweet corn seed
to plant said land and by reason of the defendant hav-
ing canceled said contract, and the plaintiff having to
plant other crops thereon, the plaintiff was compelled
to and did purchase seed for the planting of other
crops which he planted on said ground and paid there-
for as follows:

Seed corn for planting Indian or field corn on
    said land ................................$ 9.50
Soy bean seed for planting soy beans on said
    land ................................... 22.50
Soudan grass seed for planting on said land.... 16.00
which amounts were the fair cash market value of said
seeds at time plaintiff purchased and planted the
same; and also by reason of the extra help or hire

necessary for planting the crops which were actually planted on said land (which the plaintiff would not have been to had he put said 45 acres of land in sweet corn) plaintiff was compelled to and did pay out, to-wit, $57.50, and also by reason of the strength, fertility or plant food removed from said soil by reason of raising field corn or Soudan grass thereon (which would not have occurred had plaintiff planted said ground to sweet corn) the plaintiff was damaged $50.00.

"To the total damage of the plaintiff in the sum of $2,000.00 and therefore he brings suit."

The additional count is substantially the same as the other count except that it contains in addition thereto the following allegations: "It was then averred that afterwards on March 15th appellant called at appellee's office in Hoopeston and it was then and there definitely agreed between appellant and appellee that appellant would plant 40 acres of said land to Country Gentleman sweet corn for appellee and that later on, to-wit, March 15, 1931, it was agreed between appellant and appellee that appellant would plant the remaining 5 acres of said land to Country Gentleman sweet corn for appellee unless notified by appellee not to do so, and that appellant was not notified by appellee not to plant said remaining 5 acres until thereafter when appellant's contract was wrongfully canceled by appellee."

The amended original count does not show a completed contract. It is clearly evident from the circular letter of appellee that there was no intention on its part to be bound by every offer that might be made to it by growers of sweet corn. It is clearly stated that old growers would be given a preference when they had ground that appellee considered suitable for raising sweet corn. The circular also indicates that appellee had a discretion as to the amount of sweet corn which it would buy as is indicated by the statement that acre-

age offered after appellee had filled its requirements would be listed and might be accepted later.

Although the additional count contains the allegation "it was mutually then and there definitely agreed between appellant and appellee that appellant would plant forty acres of said land," etc., such averment is but a pure conclusion of law and is not a sufficient allegation of mutual promises.

Moreover, any damages which might be sought under such an alleged contract would be purely conjectural and speculative.

The judgment of the circuit court is affirmed.

*Affirmed.*